UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
SANTIAGO ASCONA,

               Petitioner,

-against-

VICTOR T. HERBERT, Superintendent,
Attica Correctional Facility,

               Respondent.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-4515 (FB)

*Appearances:*
*For the Petitioner:*
ASCONA SANTIAGO, *pro se*
98-A-2828
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

*For the Respondent:*
CHARLES J. HYNES, ESQ.
District Attorney, Kings County
By: VICTOR BARALL, ESQ.
Assistant District Attorney
350 Jay Street, 20th Floor
Brooklyn, New York 11201

**BLOCK, District Judge:**

Petitioner, Ascona Santiago ("Santiago"),[1] is currently in custody pursuant to a judgment of the Supreme Court of the State of New York, Kings County ("Supreme Court"), convicting him of first-degree manslaughter and sentencing him to 25 years in prison. On May 19, 2003, Santiago, proceeding *pro se*, filed a petition for a writ of *habeas corpus* challenging his conviction and sentence; on October 4, 2004, Santiago sought leave to amend the petition.

---

[1] Petitioner refers to himself as "Santiago Ascona"; court documents and prison records indicated that Petitioner's name is Ascona Santiago.

Leave to amend is granted.[2] As amended, Santiago's *habeas* petition raises two claims: (1) that the denial of his for-cause challenge to a prospective juror deprived him of his Sixth Amendment right to a fair and impartial jury, and (2) that his 25-year sentence violates the Eighth Amendment. Because, as explained below, those claims are without merit, the petition is denied.

I.

*A. Background*

Santiago's conviction stems from the death of Luz Ramirez ("Ramirez"). At approximately 2:00 a.m. on July 12, 1997, Ramirez, her boyfriend and some family members were leaving a restaurant and dance club in Brooklyn. As they crossed the street to get into a cab, they were surrounded by a group of five or six men. One of the men threw a beer bottle at Ramirez's boyfriend, who then punched him and got into the cab. The same man then began arguing with Ramirez and her sister; when the two women tried to push him away, he pulled out a knife and plunged it into Ramirez's chest. He then swung the knife at Ramirez's aunt and fled.

---

[2]Santiago's *habeas* petition was filed after April 24, 1996, and is, therefore, governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Rosa v. McCray*, 396 F.3d 210, 219 (2d Cir. 2005). Because AEDPA imposes a one-year period of limitation on *habeas* petitions, *see* 28 U.S.C. § 2244(d), leave to amend a petition can raise timeliness issues. *See Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 816 (2d Cir. 2000) ("Because [the petitioner] moved to amend his petition long after the one-year statute of limitations had run, he was required to show that his amended petition relates back [to the filing of the original petition]."). That is not the case here, however. The dates on which Santiago filed his original habeas petition and sought leave to amend are both well within the one-year period prescribed by § 2244(d).

Ramirez was taken to a nearby police station to await an ambulance. In the meantime, officers drove Ramirez's boyfriend and aunt back to the scene of the attack; on the way there, they spotted three men and immediately identified one of them – Santiago – as the man who had stabbed Ramirez. The three men fled. A police officer pursued and apprehended Santiago; the officer then recovered a knife he had seen Santiago drop before taking flight.

Ramirez died later that night. A doctor performed an autopsy and found the cause of death to be a single stab wound to the heart.

## B. State-Court Proceedings

In connection with Ramirez's death and the attack on her aunt, Santiago was charged with second-degree murder, attempted second-degree murder, attempted assault, criminal possession of a weapon and reckless endangerment. During plea negotiations, Santiago was offered 16 years in exchange for a guilty plea; although he claimed he would have been willing to plead guilty to first-degree manslaughter, he rejected the plea and the case proceeded to trial.

During jury selection, the trial court inquired of prospective juror James Johnson ("Johnson"), "Do you know of any reason now, any reason at all, why you can't sit on this case?" J.Tr. at 162.[3] Johnson responded, "Besides just sitting here all day long. I have injuries, severe arthritis in my lower spine. Besides from it being painful, no." *Id.* at 162-63. The court apologized for the inconvenience, but did not excuse Johnson.

---

[3]"J.Tr." refers to the transcript of jury selection.

Santiago's counsel raised a for-cause challenge to Johnson, inaccurately recalling that "[he] stated that he is in a lot of pain. He says if the pain intensifies he could have so much pain he would not concentrate." J.Tr. at 211-12. The trial court denied the challenge and stated that the pain could be alleviated by taking breaks, if necessary. Santiago's counsel then exercised a peremptory challenge; as a result, Johnson did not sit on the jury.

At trial, the government established the facts recounted *supra* Part I.A. Defense counsel introduced a photograph of Santiago taken on July 12, 1997, and a stipulation that blood found on his clothing on the night of his arrest was not Ramirez's blood. The case was then submitted to the jury. With respect to Ramirez's death, the court submitted two counts of second-degree murder and instructed the jury on the lesser-included offenses of first-degree manslaughter and second-degree manslaughter; with respect to the attack on Ramirez's aunt, the court submitted one count of attempted second-degree murder.

The jury found Santiago guilty of first-degree manslaughter, but not guilty on the remaining charges. The court sentenced Santiago to 25 years in prison. During sentencing, the court remarked, "[A]lthough he was found guilty of only [first-degree manslaughter], given the facts of this case, it should have been murder." S.Tr. at 9.[4]

Santiago appealed, arguing that the trial court erred in denying his for-cause challenge to Johnson and in considering conduct of which Santiago had been acquitted in

---

[4] "S.Tr." refers to the sentencing transcript.

imposing sentence. The Supreme Court's Appellate Division, Second Department ("Appellate Division"), held that the trial court had properly denied the for-cause challenge, but agreed that the remarks at sentencing were improper; the case was remanded for resentencing by a different Supreme Court justice. *See People v. Santiago*, 715 N.Y.S.2d 73 (2d Dep't 2000). The Court of Appeals denied Santiago's application for leave to appeal. *See People v. Santiago*, 98 N.Y.2d 772 (2002) (table).

In the meantime, the new Supreme Court justice had resentenced Santiago. Based on Santiago's status as a second violent felony offender (who was on probation when he stabbed Ramirez), the senseless nature of the crime and Santiago's lack of remorse, the court found "no mitigation that would justify anything but the maximum sentence," RS.Tr. at 8-9;[5] Santiago was once again sentenced to 25 years in prison. Santiago appealed on the grounds that the sentence was excessive and penalized him for having rejected the plea offer in favor of a jury trial. In a brief written opinion, the Appellate Division rejected those claims and affirmed the sentence. *See People v. Santiago*, 771 N.Y.S.2d 703 (2d Dep't 2004). The Court of Appeals denied Santiago's application for leave to appeal. *See People v. Santiago*, 2 N.Y.3d 806 (2004) (table).

## II.

### A. *Standards of Review*

Only federal issues may be raised on *habeas* review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Moreover, AEDPA, which governs Santiago's petition, *see supra* note 2, closely circumscribes *habeas* review of claims that have been

---

[5]"RS.Tr." refers to the resentencing transcript.

adjudicated on the merits by a state court. *See* 28 U.S.C. § 2254(d). A state court adjudicates a claim "on the merits" by disposing of the claim on substantive (as opposed to procedural) grounds and reducing its disposition to judgment. *See Eze v. Senkowski*, 321 F.3d 110, 121 (2d Cir. 2003) (citing *Sellan v. Kuhlman*, 261 F.3d 303 (2d Cir. 2001)). "Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process." *Sellan*, 261 F.3d at 311.

For claims that have been adjudicated on the merits by a state court, *habeas* relief may not be granted unless the state-court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state-court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A state-court decision involves an "unreasonable application" of clearly established federal law if the state court correctly identifies the governing Supreme Court precedent, but unreasonably applies it to the particular facts of a case. *See id.* at 409.

The Supreme Court has made it clear that "an unreasonable application is different from an incorrect one[.]" *Bell v. Cone*, 535 U.S. 685, 695 (2002). "In order for a federal court to find a state court's application of [Supreme Court] precedent

6

'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510. 520-21 (2003) (citations omitted); *see also Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) ("Some increment of incorrectness beyond error is required. We caution, however, that the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.") (internal quotation marks omitted).

State courts can adjudicate claims on the merits without explaining their reasoning, *see Sellan*, 261 F.3d at 311, and often do so. In such situations, "the federal court will focus its review on whether the state court's ultimate *decision* was an 'unreasonable application' of clearly established Supreme Court precedent." *Id.* at 311-12 (emphasis added).

## B. Santiago's Claims

Both claims presented in Santiago's petition were rejected on the merits by the Appellate Division. Therefore, the issue before the Court is whether the Appellate Division's disposition of those claims was either "contrary to," or an "unreasonable application" of, clearly established Supreme Court precedent.

### 1. Denial of For-Cause Challenge

Santiago argues, first, that the denial of his for-cause challenge violated his Sixth Amendment right to a fair and impartial jury. Denial of a for-cause challenge can implicate the right to an impartial jury, *see Wainwright v. Witt*, 469 U.S. 412 (1985), but only if the prospective juror who allegedly should have been excused actually sat on the jury.

7

*See Ross v. Oklahoma*, 487 U.S. 81, 86 (1988) ("Any claim that the jury was not impartial...must focus...on the jurors who ultimately sat."). In *Ross*, the Supreme Court clearly held that the use of a peremptory challenge to strike a prospective juror who should have been excused for cause negated any claim that the jury was not fair and impartial. *See id.* The Court also held that requiring the defendant to use the peremptory challenge did not implicate any federal constitutional right. *See id.* at 88; *see also United States v. Martinez-Salazar*, 528 U.S. 304, 307 (2000) ("Peremptory challenges are not of federal constitutional dimension.").

In the present case, the denial of Santiago's for-cause challenge was immediately followed by a peremptory challenge; as a result, the challenged juror did not sit on the jury. The Appellate Division's rejection of the claim that this somehow violated Santiago's Sixth Amendment right to an impartial jury was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent; indeed, under *Ross* and *Martinez-Salazar*, the Appellate Division's decision was correct.

## 2. Imposition of 25-Year Sentence

With respect to Santiago's claim that his 25-year sentence violates the Eighth Amendment, the only clearly established Supreme Court precedent in noncapital cases is that a sentence of a term of years cannot be grossly disproportionate to the offense. *See Lockyer v. Andrade*, 538 U.S. 63, 72 (2003) ("Through this thicket of Eighth Amendment jurisprudence, one governing legal principle emerges as 'clearly established' under § 2254(d)(1): A gross disproportionality principle is applicable to sentences for terms of years."). The Supreme Court has held that terms longer than 25 years are not grossly

disproportionate to offenses far less serious than manslaughter. *See id.* at 77 (25 years to life for petty theft); *Ewing v. California*, 538 U.S. 11 (2003) (25 years to life for grand theft); *Harmelin v. Michigan*, 501 U.S. 957 (life in prison without possibility of parole for possession of cocaine). The Appellate Division's conclusion that 25 years was an acceptable sentence for first-degree manslaughter was in no way contrary to, or an unreasonable application of, these precedents.

Apart from an Eighth Amendment claim, "[n]o federal constitutional issue is presented where...the sentence is within the range prescribed by state law," *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992). Twenty-five years of imprisonment is within the statutorily prescribed range for a second violent felony offender who commits first-degree manslaughter. *See* N.Y. Penal L. §§ 70.04(3)(a) (prescribing sentencing range for second violent felony offenders who commit class B felonies), 125.20 (defining first-degree manslaughter as a class B felony).

### III.

Santiago's *habeas* petition is denied. Because Santiago has failed to make a substantial showing of the denial of a federal right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

**SO ORDERED.**

/s/
_____
FREDERIC BLOCK
United States District Judge

Brooklyn, New York
April 15, 2005